## IN THE UNITED STATES DISTRICT COURT
## FOR THE NOTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KIMBERLY SHELTON,
DETONDRA THOMAS, GREGORY
BRANTLEY, GWENDOLYN
SANDERS, JERRY PATE, JOSHUA
CLAY, KATRINA WILLIAMS,
KEISHA WATKINS, KRYSHELL
MCNEIL, LINDA BRANTLEY,
MICHAEL FULLER, RICHARD
ALEXANDER, ROOSEVELT
JONES, SHAUNTAE SCOTT, and
STEPHANIE SCOTT

       Plaintiffs,

vs.

GOURMET SERVICES, INC.,
GOURMET SERVICES
MANAGEMENT GROUP, LLC,
NATHANIEL R. GOLDSTON,
VALARIE M. GOLDSTON, and
KIMBERLY MARTIN-GOLDSTON

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action File Number:


**JURY TRIAL DEMANDED**

## COMPLAINT

COME NOW Plaintiffs Kimberly Shelton, Detondra Thomas, Gregory

Brantley, Gwendolyn Sanders, Jerry Pate, Joshua Clay, Katrina Williams, Keisha

Watkins, Kryshell McNeil, Michael Fuller, Richard Alexander, Roosevelt Jones,

Shauntae Scott, and Stephanie Scott (hereinafter collectively referred to as

"Plaintiffs"), and Plaintiff Linda Brantley (hereinafter referred to as "Ms.

Brantley," and not included when a reference is made to "Plaintiffs") and through

the undersigned counsel of record file this Complaint against Gourmet Services,

Inc., Gourmet Services Management Group, LLC, Nathaniel R. Goldston, Valerie

M. Goldston, and Kimberly Martin-Goldston (Collectively "Gourmet Services" or

"Defendants") and shows the court as follows:

## **JUISDICTION AND VENUE**

1.

Plaintiffs bring this action under the Fair labor Standards Act of 1938, as

amended 29 U.S.C. § 201 *et seq.* ("FLSA") to recover (1) unpaid, federally

mandated straight time wages owed to Plaintiffs and liquidated damages in an

amount equal to unpaid wages; (2) unpaid, federally mandated overtime wages

owed to Plaintiffs and liquidated damages in an amount equal to unpaid overtime

wages; (3) unpaid tips owed to Plaintiffs as "tipped employees" under 29 U.S.C. §

203(t) and liquidated damages in an amount equal to unpaid tips; (4) damages for

retaliation in violation of Section 15(a)(3) of FLSA; and (5) reasonable attorneys'

fees and costs.

2.

Plaintiffs invoke the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1337, 29 U.S.C. § 216(b) of FLSA, and 28 U.S.C. § 1343(a)(4). Plaintiff also invokes this Court's pendent jurisdiction to hear Plaintiff's state law claims.

3.

Defendants Gourmet Services, Inc. is a Georgia corporation whose principle place of business is within this judicial district.

4.

Defendant Gourmet Services Management Group, LLC is a limited liability company of Georgia whose principle place of business is within this judicial district.

5.

Defendant Nathaniel R. Goldston is an individual resident of the State of Georgia.

6.

Defendant Valarie M. Goldston is an individual resident of the State of Georgia.

7.

Defendant Kimberly Martin-Goldston is an individual resident of the State of Georgia.

8.

Accordingly, pursuant to 28 U.S.C. § 1391(b)(1), venue is appropriate in the Atlanta Division of the Northern District of Georgia.

## **PARTIES**

9.

Plaintiff Kimberly Shelton is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

10.

Plaintiff Detondra Thomas is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

11.

Plaintiff Gregory Brantley is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

12.

Plaintiff Gwendolyn Sanders is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

13.

Plaintiff Jerry Pate is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

14.

Plaintiff Joshua Clay is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

15.

Plaintiff Katrina Williams is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

16.

Plaintiff Keisha Watkins is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

17.

Plaintiff Kryshell McNeil is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

18.

Plaintiff Linda Brantley is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

19.

Plaintiff Michael Fuller is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

20.

Plaintiff Richard Alexander is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

21.

Plaintiff Roosevelt Jones is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

22.

Plaintiff Shauntae Scott is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

23.

Plaintiff Stephanie Scott is an individual resident of the State of Alabama and submits to the jurisdiction of this Court.

24.

Plaintiffs were employees of Defendants, as defined in 29 U.S.C. § 203(e).

25.

Defendant Gourmet Services, Inc., an employer as defined by 29 U.S.C. § 203(d), is a qualified and licensed organization in Georgia that is entitled to do business in Georgia, and may be served with Summons and Complaint in this action by delivering process to its registered agent, Kimberly Goldston-Martin, 82 Piedmont Avenue, Atlanta, GA  30303.

26.

Defendant Gourmet Services Management Group, LLC, an employer as defined by 29 U.S.C. § 203(d), is a qualified and licensed organization in Georgia

that is entitled to do business in Georgia, and may be served with Summons and

Complaint in this action by delivering process to its registered agent, James M.

Hunter, Esq., 1600 Atlanta Financial Center 3343 Peachtree Road, N.E., Atlanta,

GA  30326.

27.

Defendants Gourmet Services, Inc. and Gourmet Services Management

Group, LLC are part of an enterprise composed of businesses with a common

purpose and under unified operation and common control of Defendants Nathaniel

R. Goldston, Valarie M. Goldston, and Kimberly Martin-Goldston. This enterprise

also currently includes the business entities Gourmet Management, LLC, Gourmet

Brands International, LLC, and Gourmet Services of Louisiana, Inc.; the registered

agent for each of these businesses is one of Defendants and located at 82 Piedmont

Avenue, Atlanta, GA  30303 – Defendant Gourmet Services, Inc.'s principal place

of business. The business enterprise operated and controlled by Defendants

Nathaniel R. Goldston, Valarie M. Goldston, and Kimberly Martin-Goldston have

yearly gross revenue in excess of $500,000.00.

28.

On information and belief, Defendants Nathaniel R. Goldston, Valarie M.

Goldston, and Kimberly Martin-Goldston have a practice of setting up multiple

business entities in an effort to avoid the jurisdiction of the Federal Courts and the

consequences of their illegal employment activities. This practice is evidenced by the fact that Defendants have operated several other businesses under the "Gourmet" name in addition to those listed above. For example, Defendants previously created the now inactive Gourmet Services of Atlanta, Inc., Gourmet Services of Georgia, Inc., and Gourmet Services Restaurant Equipment & Supply Company.

29.

Defendants Nathaniel R. Goldston, Valarie M. Goldston, and Kimberly Martin-Goldston, who are individual residents of the State of Georgia and high-level managers of Defendants Gourmet Services, Inc. and Gourmet Services Management Group, LLC, exercised control over the manner in which Plaintiffs were paid and were aware of the work performed by Plaintiffs. Defendants Nathaniel R. Goldston, Valarie M. Goldston, and Kimberly Martin-Goldston may be served with Summons and Complaint by delivering copies of the same to their attorney Arch Y. Stokes, Stokes Wagner Hunt Maretz & Terrell, 3593 Hemphill Street, Atlanta, GA 30337.

## FACTUAL ALLEGATIONS

30.

Defendants Gourmet Services, Inc. and Gourmet Services Management Group, LLC are engaged in the business of food services. Defendants principally

provide catering services on either a regular and long term basis – for example by operating an institution's cafeteria or restaurant – or by catering individual events.

31.

Plaintiffs were employed by Defendants either to provide services over an extended period to a single client of Defendants' or to provide services at discrete events which Defendants were hired to cater. Many of the service positions in which Plaintiffs were employed provided for Plaintiffs to receive tips in addition to a cash wage.

32.

On a routine basis Plaintiffs were not paid tips which they were owed; many of Plaintiffs directly witnessed Defendants take cash tips from Plaintiffs and not return them.

33.

On a nearly exclusive basis, when Plaintiffs were tipped by credit card, those tips were not paid to Plaintiffs and were instead unlawfully kept by Defendants.

34.

To give the appearance that they were in compliance with the FLSA, and so that Defendants could take a tip credit, tips were listed on Plaintiffs pay stubs despite the fact that no tips were paid to Plaintiffs. This was a deliberate and willful act by Defendants.

35.

Despite the fact that these tips were never paid to Plaintiffs, Defendants withheld income taxes from Plaintiffs as if Plaintiffs were actually paid the amount to which they were entitled.  That is, Defendants kept the tips, but forced Plaintiffs to pay the tax on that income, essentially forcing Plaintiffs to pay taxes on amounts that were treated by Defendants as their own profits.

36.

Additionally, Defendants regularly and willfully failed to appropriately calculate Plaintiffs' tips, and instead assigned tips to Plaintiffs arbitrarily, guessing at the amount Plaintiffs were "thought" to have received. On other occasions, Defendants asserted the Plaintiffs were lying about the amount of tips they had received, and Defendants would alter their business records by arbitrarily increasing the amount of tips received by Plaintiffs so as to take a higher tip credit.

37.

This wholly inappropriate "discretionary" tipping was often exercised in a retaliatory way, so that Plaintiffs who complained regarding their irregular pay or other legitimate grievances with Defendants were punished through the payment or withholding of tips.

38.

Further, Plaintiffs were never given information regarding tip credits, a very basic requirement under the FLSA.  Plaintiffs were never informed about the cash wage to which they were entitled, the amount claimed by Defendants as a tip credit, the fact that a tip credit cannot exceed the value of tips actually received by Plaintiffs, that all tips received by Plaintiffs are their own property except in accordance with a valid tip pooling arrangement, nor were Plaintiffs informed of a tip pooling arrangement if one was or is purported to exist.

39.

In essence, Defendants used any means at their disposal to prevent Plaintiffs from being properly paid.  In addition to withholding tips, Defendants would improperly record Plaintiffs' hours to create a fraudulent record which showed Plaintiffs working fewer hours than they actually did.

40.

On a regular basis, Defendants would deduct thirty to sixty minutes a day from Plaintiffs' paychecks – under the guise of giving Plaintiffs a break for lunch – despite the fact that Plaintiffs were required to work continuously through the day.

41.

Additionally, Defendants regularly issued bad checks to employees, causing them not only to bounce their own personal checks, but also causing Plaintiffs to

incur bank fees as a result of bouncing checks. Despite the fact that Plaintiffs

informed Defendants of these fees, Plaintiffs were never reimbursed.

42.

In some instances, rather than issuing Plaintiffs bad checks, Plaintiffs would

not receive a timely paycheck at all.  When asked why no payment had been made,

Defendants told Plaintiffs that ADP, Inc., the agency which was purported to

manage payments to employees, must have "lost the fax" that contained the payroll

information, which prevented the issuing of checks.  Plaintiffs were never

compensated for the harm caused by the late payments.

43.

In other instances, rather than simply failing to timely pay Plaintiffs and

issuing paychecks only after employee complaints, Defendants would give

Plaintiffs letters stating that they would be paid a week late.  Defendant neither

explained these late payments nor made restitution for the hardship such lateness

caused.

44.

Furthermore, the oral employment contracts between Plaintiffs and

Defendants provided that Plaintiffs were entitled to between 40 and 80 hours of

paid vacation pay each year. This agreement is evidenced by Defendants Employee

Manual. In spite of the promise of paid vacation, Plaintiffs were never paid for

qualifying vacation and were not paid additional amounts when they did not take vacation days.

45.

One of the more egregious examples of the Defendants' failure to properly pay Plaintiffs occurred in October of 2012, when employees of Defendants were required to cater an event at Alabama State University.

46.

In what appeared to be an uncharacteristic attempt to accommodate their employees, Defendants told Plaintiffs that hotel rooms would be provided for employees so that they would not be forced to make the lengthy drive back to Selma, Alabama late at night after the conclusion of the event.

47.

Despite reliance on this promise, no rooms were provided for any of the employees of Defendants who worked the event, and the employees were forced to drive home very late at night. Additionally, Defendants utterly failed to pay any employees for working the event at Alabama State University.

48.

What's more, despite Defendants' promises that Plaintiffs would be reimbursed for travel expenses to get to Alabama State University, Plaintiffs were never reimbursed by Defendants.

49.

Plaintiffs, understandably discontent with the unfair payment practices of Defendants, and stuck in situations where they were unable to make ends meet, on several occasions complained to Defendants about the unfair, arbitrary, illegal, and wholly inadequate payment of wages.  Rather than remedy the situation and pay Plaintiffs the wages owed, Defendants would respond to complaints by retaliatorily withholding entire paychecks, reducing Plaintiffs wages, manufacturing reasons to terminate Plaintiffs, or terminate Plaintiffs without any reason at all.

50.

By their actions, Defendants have willfully violated the Fair Labor Standards Act by regularly and repeatedly failing to compensate Plaintiffs appropriately for straight time hours worked, overtime hours worked, and by withholding tips.

**Plaintiff Linda Brantley**

51.

Like her co-plaintiffs, Ms. Brantley was mistreated by Defendants during the course of her employment with Gourmet Services, where she worked in a supervisory or managerial role.

52.

On several occasions, because of lack of foresight or financial mismanagement by Defendants, Ms. Brantley was required purchase supplies in order to complete catering obligations of Defendants.

53.

These purchases, which provided no personal benefit to Ms. Brantley, and were made in service of Defendants and furnished great benefit to them, were accepted by Defendants.

54.

Over the course of her employment with Defendants, Ms. Brantley expended substantial sums to the benefit of Defendants. Of the total funds Ms. Brantley expended, she was never reimbursed for approximately $6,000.00 in expenditures.

## COUNT I
## FAILING TO PAY PLAINTIFFS FOR ALL HOURS WORKED IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

55.

Plaintiffs re-allege the preceding paragraphs as if set forth fully herein.

56.

During all times relevant to this action Defendants failed to pay Plaintiffs for all the hours Plaintiffs worked in service of Defendants.  In addition to unlawfully failing to pay Plaintiffs for a period ranging from a half to a full hour each day as a

matter of course, Defendants otherwise did not pay Plaintiffs for all hours worked for Defendants.

57.

Defendants have not made a good faith effort to comply with the FLSA.

58.

Defendants have willfully chosen not to comply with the FLSA.

59.

Defendants Nathaniel R. Goldston, Valerie M. Goldston, and Kimberly Martin-Goldston, controlled the financial affairs and the allocation of financial resources of Defendants Gourmet Services, Inc. and Gourmet Services Management Group, LLC, and caused Defendants failure to pay Plaintiffs according to the requirements of the FLSA.

60.

As a result of Defendants' FLSA violations, Plaintiffs have suffered damages in the form of unpaid wages.

61.

Pursuant to the FLSA, Plaintiffs bring this suit to recover unpaid wages, liquidated damages in an equal amount, attorneys' fees, the costs of this litigation, and any other damages to which Plaintiffs are entitled by law.

<strong><u>COUNT  II</u></strong>

## FAILING TO PAY PLAINTIFFS OVERTIME IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

### 62.

Plaintiffs re-allege the preceding paragraphs as if set forth fully herein.

### 63.

During all times relevant to this action, Defendants employed Plaintiffs to work more than forty (40) hours in a week and failed to compensate them for hours worked in excess of forty (40) hours per week at a rate at least one and one-half times the regular rate at which they were employed, contrary to § 7 of the FLSA.

### 64.

Defendants have not made a good faith effort to comply with the FLSA.

### 65.

Defendants have willfully chosen not to comply with the FLSA.

### 66.

Defendants Nathaniel R. Goldston, Valerie M. Goldston, and Kimberly Martin-Goldston, controlled the financial affairs and the allocation of financial resources of Defendants Gourmet Services, Inc. and Gourmet Services Management Group, LLC, and caused Defendants failure to pay Plaintiffs according to the requirements of the FLSA.

### 67.

As a result of Defendants' violations of the FLSA, Plaintiffs have suffered damages in the form of unpaid overtime wages.

68.

Pursuant to the FLSA, Plaintiffs bring this suit to recover the overtime wage differential, liquidated damages in an equal amount, attorneys' fees, the costs of this litigation, and any other damages to which Plaintiffs are entitled by law.

## COUNT III
## FAILING TO PAY PLAINTIFFS TIPS IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

69.

Plaintiffs re-allege the preceding paragraphs as if set forth fully herein.

70.

During all times relevant to this action, Defendants reduced and denied tips owed to Plaintiffs as tipped employees within the meaning of the FLSA; Defendants also submitted pay stubs to Plaintiffs and to the Internal Revenue Service reflecting tips that Plaintiffs never received, causing Plaintiffs to pay taxes on amounts that were never paid to them.

71.

Defendants have not made a good faith effort to comply with the FLSA.

72.

Defendants have willfully chosen not to comply with the FLSA.

73.

Defendants Nathaniel R. Goldston, Valerie M. Goldston, and Kimberly Martin-Goldston, controlled the financial affairs and the allocation of financial resources of Defendants Gourmet Services, Inc. and Gourmet Services Management Group, LLC, and caused Defendants failure to pay Plaintiffs according to the requirements of the FLSA.

74.

As a result of Defendants' violations of the FLSA, Plaintiffs have suffered damages in the form of unpaid tips.

75.

Pursuant to the FLSA, Plaintiffs bring this suit to recover the amount of their unpaid tips, liquidated damages in an equal amount, attorneys' fees, the costs of this litigation, and any other damages to which Plaintiffs are entitled by law.

## COUNT IV
## VIOLATION OF THE ANTI-RETALIATION PROVISIONS
## OF THE FAIR LABOR STANDARDS ACT

76.

Plaintiffs re-allege the preceding paragraphs as if set forth fully herein.

77.

Defendants, individually and jointly, have violated the FLSA by retaliating against Plaintiffs for asserting their federally protected rights.

78.

After Plaintiffs complained about Defendants FLSA violations, Defendant retaliated against Plaintiffs by withholding paychecks, lowering wages, withholding tips, and/or abruptly terminating Plaintiffs employment with Defendants.

79.

Defendants' actions of retaliation against Plaintiffs have caused pecuniary losses to the Plaintiffs including but not limited to, lost wages as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT V
## FRAUDULENT FILING OF INFORMATION RETURN WITH IRS

80.

Plaintiffs re-allege the preceding paragraphs as if set forth fully herein.

81.

Both during and after Plaintiffs employment with Defendants, Defendants issued Internal Revenue Service ("IRS") Form W2 and Form 1099-Misc documents to Plaintiffs.

82.

The information returns issued to Plaintiffs by Defendants report amounts of compensation to Plaintiffs that are false in that they attribute payments to Plaintiffs in the form of tips that were never actually received by Plaintiffs.

83.

Defendants willfully filed fraudulent information returns with respect to payments purportedly made to Plaintiffs as Defendants knew that the wages it reported for Plaintiffs were incorrect and included amounts never paid to Plaintiffs.

84.

Pursuant to 26 U.S.C. § 7434(b), Defendants are liable to Plaintiffs for an amount equal to the greater of $5,000.00 or the sum of (1) actual damages to Plaintiffs, (2) the costs of this action against Defendants, and (3) Plaintiffs' attorneys' fees.

## PLAINTIFFS' STATE LAW CLAIMS

## COUNT VI
## CONVERSION

85.

Plaintiffs re-allege the preceding paragraphs as if set forth fully herein.

86.

By either failing to pay Plaintiffs tips made by credit card or taking cash tips from Plaintiffs, Defendants intentionally interfered with Plaintiffs' right to possession of their property.

87.

Plaintiffs asked Defendants about the non-payment of tips and asked that they be paid the tips that they earned. However, without legal justification, Defendants refused to pay Plaintiffs their tips.

88.

As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered damages in an amount to be determined at trial.

**COUNT VII**
**PROMISSORY ESTOPPEL**

89.

Plaintiffs re-allege the preceding paragraphs as if set forth fully herein.

90.

Through there representations and promises to Plaintiffs that hotel rooms would be provided and travel expenses reimbursed in relations to the catering event at Alabama State University, Defendants reasonably should have expected, and in fact affirmatively did expect, to induce Plaintiffs into traveling to Alabama State University to perform catering services.  Based on Defendants'

22

representations and promises, Plaintiffs forwent other opportunities to work the event at Alabama State University.

91.

Due to and in reliance on Defendants' representations and promises, Plaintiffs have incurred expenses in order to travel to and from Alabama State University.

92.

Therefore, under O.C.G.A. § 13-3-44, Defendants are liable to Plaintiffs for the expenses incurred in reliance on the representations and promises of Defendants.

**COUNT VIII**
**NEGLIGENT RETENTION AND SUPERVISION**

93.

Plaintiffs re-allege the preceding paragraphs as if set forth fully herein.

94.

Based on Defendants Nathaniel R. Goldston, Valarie M. Goldston, and Kimberly Martin-Goldston repeated and intentional refusals to properly pay Plaintiffs and on the repeated acts of retaliation by these Defendants when Plaintiffs complained that they were not being paid properly, Defendants Gourmet Services, Inc. and Gourmet Services Management Group, LLC, knew or should

23

have known that Defendants Nathaniel R. Goldston, Valarie M. Goldston, and Kimberly Martin-Goldston had a propensity to not pay employees their legally mandated wages and to retaliate against employees who complained that they were improperly paid.

95.

As a result of the propensity of Defendants Nathaniel R. Goldston, Valarie M. Goldston, and Kimberly Martin-Goldston to not pay employees their legally mandated wages and to retaliate against employees who complained that they were improperly paid, Defendants Nathaniel R. Goldston, Valarie M. Goldston, and Kimberly Martin-Goldston failed to pay Plaintiffs their legally mandated wages and retaliated against Plaintiffs when they complained that they were being improperly paid,

96.

As a direct and proximate result of the wrongful and unlawful actions of Defendants, Plaintiffs have suffered lost wages and benefits of employment, and will suffer additional lost wages and benefits of employment in the future, in an amount to be determined at trial.

97.

As a direct and proximate result the wrongful and unlawful actions of Defendants, Plaintiffs have suffered and continue to suffer emotional pain and

24

suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to reputation, and other past and future pecuniary losses.

## COUNT IX
## BREACH OF CONTRACT

98.

Plaintiffs re-allege the preceding paragraphs as if set forth fully herein.

99.

In offering them employment, Defendants agreed to pay Plaintiffs an hours wage for all hours works, agreed to pay overtime where appropriate, stated that Plaintiffs would receive tips, and stated that Plaintiffs would receive paid vacation.

100.

Plaintiffs accepted employment under the terms offered by Defendants.

101.

Although contractually bound, Defendants failed to provide Plaintiffs with the agreed upon compensation.

102.

As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered damages in an amount to be determined at trial.

## COUNT X
## BREACH OF IMPLIED PROMISE TO PAY

103.

Plaintiff Linda Brantley re-alleges the preceding paragraphs as if set forth fully herein.

104.

Plaintiff Brantley expended approximately $6,000.00 in personal funds in order to buy catering supplies for Defendants. Ms. Brantley's purchases were made solely for the benefit of Defendants and supplied no personal benefit to Ms. Brantley.

105.

The acts of Ms. Brantley and Defendants, and Defendants acceptance of the supplies purchased by Ms. Brantley, imply that Defendants understood that Ms. Brantley expected to be reimbursed for her purchases when they accepted the supplies.

106.

As such, under O.C.G.A. § 9-2-7 there was an implied promise that Defendants would pay Ms. Brantley the value of the goods purchased on their behalf. Defendants failed to pay Ms. Brantley.

107.

As a direct and proximate result of Defendants' wrongful conduct, Ms. Brantley has suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request that this Court:

(A)      Grant Plaintiffs trial by jury as to all Counts in the Complaint;

(B)      Enter Judgment awarding Plaintiff unpaid tips and wages pursuant to 29 U.S.C. §§ 206(d) and 207, liquidated damages as provided by 29 U.S.C. § 216, pre-judgment interest on unpaid wages pursuant to 29 U.S.C. § 216, court costs, expert witness fees, and reasonable attorney's fees as provided under 29 U.S.C. § 216 and all other remedies allowed under the FLSA, including but not limited to punitive damages, should they be permitted, in an amount to be determined at trial but in no event less than $150,000.00;

(C)      Enter judgment awarding Plaintiff lost wages, an equal amount as liquidated damages, compensatory damages, attorney's fees, costs, and all other remedies allowed under FLSA for Defendants' retaliation against Plaintiffs for asserting their rights under the FLSA, including punitive damages, should they be permitted, in an amount to be determined at trial but in no event less than $150,000.00;

(D)      Grant declaratory relief to the effect that Defendants have violated Plaintiff's statutory rights;

(E)      General damages for mental and emotional suffering caused by Defendants' Conduct

(F)     Punitive damages based on Defendants' willful, malicious,

        intentional, and deliberate acts;

(G)     Special damages and/or liquidated damages for lost wages and

        benefits and prejudgment interest thereon;

(H)     Reasonable attorneys' fees and expenses of litigation;

(I)     Prejudgment interest at the rate allowed by law;

(J)     Award Plaintiff such further and additional relief as may be just and

        appropriate.


Respectfully submitted this 19th day of December, 2013


<u>/s/ Regina S. Molden</u>
Regina S. Molden
Georgia Bar No. 515454
Alec MacInnes
Georgia Bar No. 106163
Peachtree Center - Harris Tower
233 Peachtree Street, N.E. Suite 1245
Atlanta, Georgia 30303
Telephone: (404) 324-4500
Facsimile: (404) 324-4501


Counsel for Plaintiffs

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that Plaintiff's Amended Initial Disclosures complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the Northern District of Georgia. Counsel hereby states that Plaintiff's Initial Disclosures have been typed in Times New Roman 14 point.

This 19th day of December, 2013.

/s/ Regina S. Molden
Regina S. Molden, Esq.
Georgia Bar No. 515454